UNITED STATES of America,

v.

Joseph DEGLOMINI, Michael Contillo, Thomas Borek, and Paul Staffaroni, Defendants.

No. 98 CR 917 (ARR).

United States District Court, E.D. New York.

July 24, 2000.

Richard M. Asche, Litman, Asche & Gioiella, LLP, New York City, for Joseph Deglomini.

Russell M. Gioiella, Litman, Asche & Gioiella, LLP, New York City, for Michael Contillo.

Catherine L. Redlich, Driscoll & Redlich, New York City, for Thomas Borek.

Charles A. Clayman, Clayman & Rosenberg, New York City, for Paul Staffaroni.

Patricia Notopoulos, Office of U.S. Attorney, Criminal Div., Brooklyn, NY, for U.S.

## OPINION AND ORDER

ROSS, District Judge.

The defendants in this case move to dismiss the indictment, arguing that its is barred by the statute of limitations. The indictment was handed up prior to the expiration of the limitations period and placed under seal. Fourteen months elapsed before the defendants were arrested and the indictment was unsealed and during that time, the limitations period ran. The question presented in the case is whether the circumstances of the initial sealing and the delay in unsealing are such that the limitations period should be tolled. Specifically, I must consider whether, when the government unreasonably delays the unsealing of an indictment, a defendant

must present evidence of resulting actual prejudice in order to prevail on a statute of limitations defense. For reasons explained below, I conclude that no showing of prejudice is required and therefore dismiss the indictment.

## BACKGROUND

The defendants are charged with one count of conspiring to reduce the personal income tax liability of defendants Joseph Deglomini and Michael Contillo from 1989 through 1991 in violation of 18 U.S.C. § 371. Mr. Deglomini and Mr. Contillo owned two plumbing companies called De-Con Mechanical Contractors, Inc. ("De-Con") and Gleelan/De-Con, Inc. ("Gleelan"). De-Con and Gleelan were qualified under Subchapter S of the Internal Revenue Code. Defendants Thomas Borek and Paul Staffaroni were partners in Borek, Stockel and Marden, an accounting firm that prepared the tax returns for the two plumbing companies. The indictment charges the defendants with conspiring to understate the income of the two companies, and consequently of Mr. Deglomini and Mr. Contillo, by falsely inflating the companies' business expense deductions in the amount of $4,763,000 for De-Con and $1,160,000 for Gleelan.

In April 1994, the four defendants were indicted by a state grand jury for, *inter alia,* understating income on state and city tax returns for the years 1989 through 1991. The factual bases for the state court indictments were identical to those that would later underlie the federal indictment. The prosecution in state court consumed years, and eventually in January 1998, Mr. Deglomini, Mr. Contillo, and Mr. Borek each pleaded guilty to one misdemeanor. Mr. Staffaroni did not plead, and all state charges against him were dismissed in April 1999 for violation of his right to a speedy trial. In 1994, the Assistant United States Attorney ("A.U.S.A.") prosecuting the case, Patricia Notopoulos, met with the attorney for Mr. Staffaroni and with the prosecutor in the state case.

Later she succeeded in having the state grand jury minutes unsealed for the federal investigation. In June 1997, Mr. Staffaroni was arrested on federal charges resembling those in the current indictment. When the other defendants learned of Mr. Staffaroni's arrest, their lawyers contacted the A.U.S.A. and asked that if she intended to file charges against their clients, they be permitted to surrender voluntarily.

On September 23, 1998, a federal grand jury returned the indictment giving rise to this prosecution. That same day, a magistrate judge signed arrest warrants and, at the application of the government, sealed the indictment. Rule 6(e)(4) of the Federal Rules of Criminal Procedure grants the magistrate judge the authority to seal an indictment "until the defendant is in custody or has been released pending trial." The rule does not spell out the precise purposes for which an indictment may be sealed, and the Second Circuit has held that various prosecutorial objectives will support a decision to seal. *See United States v. Srulowitz,* 819 F.2d 37, 40 (2d Cir.1987). Mr. Deglomini, Mr. Contillo, and Mr. Borek were arrested nearly fourteen months later, on November 17, 1999, at which time the indictment was unsealed. Mr. Staffaroni was permitted to surrender voluntarily on December 8, 1999. The government has explained the delay only by stating that "[a]fter the arrest warrants were issued, they were given to the [Internal Revenue Service] case agent. Due in part to a pressing caseload and in part to a certain lack of expediency, the execution of the arrest warrants did not occur until approximately 14 months after the indictment was filed." Notopoulos Aff. ¶ 8.

An indictment for a tax conspiracy under 18 U.S.C. § 371 must be "found" within six years of the commission of the offense. *See* 26 U.S.C. § 6531(8). The limitations period begins to run on the date of the last overt act alleged, in this case October 21, 1992, and would therefore be expected to expire on October 21, 1998. The indictment was returned on Septem-

ber 23, 1998 but sealed until November 17, 1999. The Second Circuit has held that an indictment timely filed and properly sealed will be found when the indictment is sealed, even if the indictment is unsealed after the expiration of the limitations period. *See United States v. Watson,* 599 F.2d 1149, 1154 (2d Cir.) [hereinafter *Watson I* ]. *amended on reh'g by* 690 F.2d 15 (2d Cir.1979) [hereinafter *Watson II* ], *modified en banc sub nom. United States v. Muse,* 633 F.2d 1041 (2d Cir.1980); *United States v. Michael,* 180 F.2d 55 (3d Cir. 1949). The burden is on the government to establish legitimate reasons for sealing the indictment if the decision to seal is challenged *ex post* by the defendant. *See Srulowitz,* 819 F.2d at 41. In the absence of a proper purpose for sealing, the indictment is considered to be found upon unsealing. *See id.* at 40. Thus, "[i]f the Government cannot demonstrate such a prosecutorial need, the expiration of the statute of limitations prior to unsealing would invalidate the indictment as in any case where an indictment is untimely filed." *United States v. Slochowsky,* 575 F.Supp. 1562, 1567 (E.D.N.Y.1983).

Even where the government has legitimate interests warranting sealing of the indictment, the right of the government to seal an indictment beyond the period established by the statute of limitations is not boundless. "[W]hen a sealed indictment has tolled the statute of limitations, the policy of repose underlying the statute demands that the Government unseal the indictment as soon as its legitimate need for delay has been satisfied." *Watson I,* 599 F.2d at 1154. The *Watson* court recognized the importance of statutes of limitations to protect against the "inevitable prejudice to the defendant occasioned by the delay." *Id.* Given the "strong policy of notifying criminal defendants of the charges against them so that they may prepare a defense," the Second Circuit held that the limitations period may be extended by sealing the indictment only within "reasonable limits." *Id.* at 1155. "This standard permits an extension only to the degree necessary to accommodate the prosecutorial interests that the sealing of the indictment legitimately furthers." *Id.See also United States v. Sherwood,* 38 F.R.D. 14, 18–19 (D.Conn.1964) (holding that Fed.R.Crim.P. 6(e) "is obviously intended to be exercised only for a reasonable and limited period, during which prompt government action can accomplish its clearly stated purpose"); *United States v. Heckler,* 428 F.Supp. 269 (S.D.N.Y.1976) ("When the defendants are available the government may not seal an indictment for more than a reasonable time after the statute of limitations has expired."); *cf. United States v. Richard,* 943 F.2d 115, 119 (1st Cir.1991) (refusing to dismiss an indictment because the reasons for the delay in unsealing were legitimate prosecutorial objectives).

█ In this case, the government implicitly concedes that the delay in unsealing the indictment was unreasonable, admitting in its memorandum that "[i]n the present case, although a reasonable period of delay was warranted, the government is hard pressed to justify the fact that the case agent took fourteen months to arrest the defendants." Gov't Mem. 12. Having in effect acknowledged that the protracted delay in unsealing cannot be justified by legitimate prosecutorial purposes, the government seeks, instead, to salvage the indictment by arguing that any time an indictment is sealed properly, the defendant must show actual prejudice in order to prevail on statute of limitations grounds. I disagree. Where the government has no legitimate purpose served by keeping the indictment sealed beyond the expiration of the limitations period, the defendants need not show prejudice, even if the indictment was properly sealed initially.[1]

1. The defendants argue that the indictment was not sealed properly and should be dismissed on that ground as well. According to an affirmation of the A.U.S.A. prosecuting the case, the government feared that if the indictment were disclosed, the defendants would

## DISCUSSION

Recognizing important policies underlying the statute of limitations, *Watson* narrowly constrained the government's ability to toll the limitations period by sealing an indictment; an indictment may remain sealed only for a reasonable time in light of the government's prosecutorial needs. *See Watson I*, 599 F.2d at 1154. The question before this court, which *Watson* did not have occasion to reach, is what effect an unreasonable delay in unsealing will have on a statute of limitations defense. The *Watson* court did not address this issue because it concluded that the delay of sixteen months was reasonable, as the government used that time to locate missing defendants. *See Watson I*, 599 F.2d at 1155. The finding that the government's delay was reasonable was not disturbed by the en banc court that modified *Watson*. *See United States v. Muse*, 633 F.2d 1041 (2d Cir.1980) (en banc).[2] Nor have the other Second Circuit decisions addressing when sealed indictments toll the limitations period reached this issue.[3] Whether a defendant must prove actual prejudice to prevail on a statute of limitations claim when the government has unreasonably delayed unsealing the indictment thus is an open question.

In support of its position that the defendants must demonstrate prejudice notwithstanding an unreasonable delay in unsealing, the government cites only *United States v. Shell*, 961 F.2d 138 (9th Cir.), *withdrawn*, 974 F.2d 1035 (9th Cir.1992). In that opinion, which was later withdrawn, the Ninth Circuit adopted *Watson*'s formulation that an indictment may be sealed "only to the degree necessary to accommodate the prosecutorial interests that the sealing of an indictment legitimately furthers." *Shell*, 961 F.2d at 142. The court found the delay in unsealing after expiration of the statute of limitations unreasonable, but allowed the indictment to stand because the defendant could not demonstrate actual prejudice. *See id.* at 142–43. It ruled that the unreasonable delay in unsealing must be balanced against the government's needs, and that only when the defendant suffers actual prejudice is dismissal of the indictment appropriate. *See id.*[4] I am not persuaded

flee and, due to their alleged ties to organized crime, evidence would be destroyed and witnesses intimidated. *See* Notopoulos Aff. ¶¶ 5, 7. The defendants argue that the A.U.S.A.'s subsequent actions demonstrate that those reasons are pretextual. They point out that the government gave the defendants lenient terms of release after arraignment, that all four defendants had had perfect attendance records in state court, and that the same witnesses and evidence had been pertinent to the state court prosecutions. *See* Redlich Aff. ¶¶ 10, 13; Clayman Aff. ¶¶ 10–11, 14; Asche Aff. ¶¶ 2–6. Because the government's delay in unsealing was unreasonable, the court does not consider whether the indictment was properly sealed.

2. *Watson* held that when an indictment is sealed beyond the expiration of the limitations period but for a reasonable length of time, a defendant may succeed on a motion to dismiss the indictment if he can demonstrate that he suffered actual prejudice between the commission of the crime and the unsealing of the indictment. *See Watson I*, 599 F.2d at 1155–56. *Muse* modified *Watson* by holding that the court may consider prejudice to the

defendant accruing only while the indictment was sealed or during the period after the limitations period expired and before the indictment was unsealed. *See Muse*, 633 F.2d at 1043–44.

3. *United States v. Srulowitz*, 819 F.2d 37 (2d Cir.1987), addressed whether the initial sealing was justified, not whether any delay in unsealing was reasonable. *See* 819 F.2d at 40–41. *United States v. Southland Corp.*, 760 F.2d 1366 (2d Cir.1985), also dealt with proper purposes for sealing indictments, and did not address whether a delay in unsealing the indictment was reasonable or the implications of an unreasonable delay.

4. *Shell* relied on an Eleventh Circuit decision, *United States v. Mitchell*, 769 F.2d 1544 (11th Cir.1985), which was not precisely on point, as it considered whether the defendant's right to a speedy trial was violated. *See id.* at 1546. In that case, the court performed a speedy trial analysis under *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), considering the four factors that courts should assess in determining whether a defendant's right to a speedy trial was violat-

by *Shell.* Although no Second Circuit opinion has explicitly addressed this issue, the policies underlying the statute of limitations, policies on which *Watson* and *Muse* rest, suggest that no showing of prejudice ought to be required when the government unreasonably delays unsealing the indictment.

■ There is no extant precedent for requiring a showing of prejudice to dismiss an indictment found after the limitations period has expired. If the government simply fails to indict by the time the limitations period has expired, the defendant's interest in repose overrides society's interest in punishment; no showing of prejudice is required by the defendant. In such a case, "we bar prosecution—however strong the prosecutorial interest may be." *Watson II,* 690 F.2d at 16. *See also United States v. Marion,* 404 U.S. 307, 322, 92 S.Ct. 455, 464, 30 L.Ed.2d 468 (1971) ("These statutes [of limitations] provide predictability by specifying a limit beyond which there is an *irrebuttable presumption* that a defendant's right to a fair trial would be prejudiced.") (emphasis added). Similarly, the Second Circuit has held that if the government lacks legitimate prosecutorial purposes in sealing the indictment in the first instance and the limitations period expires before unsealing, the statute of limitations is violated and no prejudice must be shown. *See Srulowitz,* 819 F.2d at 40–41.[5] The Second Circuit has

required a showing of prejudice only when it has held that the indictment was found prior to the expiration of the limitations period—that is, timely handed up and properly sealed for a reasonable time. In such a case, a defendant can escape prosecution only by demonstrating that he was actually prejudiced by the delay. *See Watson I,* 599 F.2d at 1155; *Muse,* 633 F.2d at 1043.

Extending the prejudice requirement to the case *sub judice,* where the government unreasonably delayed unsealing the indictment and the limitations period consequently was not tolled, would undermine the statute of limitations. One of the primary purposes of statutes of limitations is "to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past." *Toussie v. United States,* 397 U.S. 112, 114–115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970). In recognition of this "overwhelming concern," *United States v. Podde,* 105 F.3d 813, 820 (2d Cir.1997), courts liberally construe statutes of limitations in favor of repose. *Toussie,* 397 U.S. at 115, 90 S.Ct. at 860. *See also Podde,* 105 F.3d at 820 (refusing to make "good-faith" exception to the statute of limitations so that government could re-indict defendant). The danger in allowing the government free rein to toll the limitations period by sealing indict-

---

ed. The fourth of these factors is whether the defendant was prejudiced by the delay. *See Mitchell,* 769 F.2d at 1546 (citing *United States v. Dennard,* 722 F.2d 1510, 1512 (11th Cir.1984)). The district court had found prejudice as a matter of law because the indictment had been unreasonably sealed beyond the limitations period. *See id.* at 1547. The Eleventh Circuit found that the district court's approach gave "undue attention to the interests of defendants and virtually ignore[d] the competing interests of the government." *Id.* at 1548. It held that in considering a speedy trial claim, the prejudice prong would not be assumed by virtue of the fact that the limitations period had expired, even if the delay in unsealing was unreasonable. *See id.* It did not consider whether the indictment should

have been dismissed on statute of limitations grounds.

5. *Srulowitz* did not explicitly hold that no showing of prejudice was required, but that holding was implicit in the opinion. The court remanded to the district court to "determine whether the government had proved that the decision to seal was impelled by proper prosecutorial purposes." *Srulowitz,* 819 F.2d at 41. The district court was instructed to dismiss the indictment if the government could not prove that the sealing was proper, though the Second Circuit acknowledged that "the defendant was unable to demonstrate any prejudice arising from the sealing of his indictment[.]" *Id.*

ments was well-articulated in *United States v. Sherwood,* 38 F.R.D. 14, 20 (D.Conn.1964), a case cited by *Watson I.* In *Sherwood,* the court found the thirteen-month delay in unsealing unreasonable and then presumed prejudice therefrom as a matter of law, reasoning:

> The five-year criminal statute of limitations would have little or no meaning were the law to be construed otherwise. A person would never know with certainty that a sealed indictment might be lurking in undisclosed government files, held in abeyance for a year or years to satisfy the personal motives of a government official.

38 F.R.D. at 20 (holding that defendants' right to a speedy trial was violated). Requiring a showing of actual prejudice to the defendant would give the government carte blanche, creating potential for abuse. At the theoretical extreme, even a patently unjustified delay of virtually limitless duration would toll the limitations period, so long as the defendant is unable to meet the burden of proving actual prejudice to his defense as a result of the delay.

The holding in *Watson* intended to prevent just such an outcome. Recognizing the important interests protected by statutes of limitations, it nonetheless allowed for a "narrow exception" to the general rule that a prosecution may not be brought after the limitations period has expired. *Watson II,* 690 F.2d at 16. Even Judge Friendly, who dissented in *Watson* both initially and on rehearing, agreed that the policy considerations underlying statutes of limitations demanded " 'that the Government unseal the indictment as soon as its legitimate need for delay has been satisfied.' " *Watson II,* 690 F.2d at 19 (Friendly, J., dissenting) (quoting *Watson I,* 599 F.2d at 1154). The implication of the holding in *Watson* is that where the government's prosecutorial need is not sufficiently strong, the limitations period shall not be extended. In such a case, there is no countervailing interest warranting departure from the "established doctrine"

that " 'criminal statutes of limitation are to be liberally interpreted in favor of repose.' " *Watson I,* 599 F.2d at 1154 (quoting *United States v. Marion,* 404 U.S. 307, 322 n. 14, 92 S.Ct. 455, 464 n. 14, 30 L.Ed.2d 468 (1971)).

Were a defendant required to show actual prejudice after an unreasonable government delay in unsealing an indictment just as he must when the delay is found to be reasonable, *Watson*'s carefully-drawn distinction between reasonable and unreasonable delays would be meaningless. In either case, so long as the initial decision to seal was warranted, the defendant would prevail only if he could demonstrate actual prejudice. Such an outcome would fly in the face of *Watson*'s clear intention. *See Watson I,* 599 F.2d at 1156 n. 4 ("Indeed, even if the defendant shows *no* prejudice, delay in unsealing the indictment would be unreasonable if there were no legitimate prosecutorial need for it.") (emphasis in original). To allow delay in unsealing the indictment to toll the limitations period indefinitely, regardless of the reason for the delay, would convert *Watson*'s "narrow exception" into a major loophole in the statute of limitations. In light of both *Watson*'s clear mandate that the government unseal the indictment as soon as its purposes in sealing have been served and the general reluctance of courts to impinge on protections afforded by statutes of limitations, such an outcome is not warranted.

## CONCLUSION

Because the government unreasonably delayed unsealing the indictment after the limitations period had expired, the prosecution is barred by the statute of limitations. Accordingly, the defendants' motion to dismiss the indictment is granted.

The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.