AMBRO, Circuit Judge,
concurring.
I agree with my colleagues that an indictment may be sealed for any proper prosecutorial purpose, and to do so tolls the 70-day Speedy Trial Act clock. My problem is that we do not know why the indictment was sealed, and remained sealed for as long as it did, in Zahir’s case.[1] He has made a plausible, but as yet untested, allegation that the indictment returned against him was sealed in bad faith (hence not a proper prosecutorial purpose). So substantive is this argument that our Court granted a certificate of appealability as to whether Zahir’s trial counsel was ineffective for failing to move to dismiss the indictment of Zahir for a Speedy Trial Act violation, and the parties were asked to address “the 12-month delay in unsealing the indictment,” indicating a concern about possible bad faith.
According to Zahir, the specific reason for the delay in unsealing the indictment was that the Government had not yet received fingerprint and chemical analysis requested from the forensics lab and was unprepared to proceed to trial without that evidence. To support this allegation, Zahir attached exhibits to his § 2255 motion, showing that on November 12, 2003, the Postal Inspector investigating his case, Yvette Thomas, requested “Fingerprint and Chemistry Examination” from a forensics lab.[2] However, it was not until March 30, 2004, after nearly 120 days had run were the indictment not sealed, that Thomas apparently received a reply from the forensics lab supplying the test results. Zahir claims this delay was in bad faith and calls for dismissal with prejudice of his indictment.
The Speedy Trial Act requires that three factors be considered in determining whether an indictment shall be dismissed *589 with or without prejudice: “the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.” 18 U.S.C. § 3162(a)(1). The Supreme Court has instructed that “evidence of bad faith on the part of the Government ... supports [though it does not compel] dismissal with prejudice.” United States v. Ferguson, 565 F.Supp.2d 32, 46 (D.D.C.2008) (citing United States v. Taylor, 487 U.S. 326, 339, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988)).
Generally, when a plausible allegation of bad faith has been made, I would remand to the District Court for an evidentiary hearing on the issue. After all, as Zahir was indicted, wouldn’t that have been based on evidence the Government already had? We thus would benefit from an evidentiary hearing on several contested factual issues. The most important is whether the Government sealed the indictment, and/or kept it sealed, because it was waiting for evidence from the forensics lab that it needed to proceed to trial despite having indicted Zahir already. Other unknown material facts include: (1) when did the Government become aware of Zahir’s desire to proceed to trial (although the Government concedes it was between January 8, 2004 and March 12, 2004), which would have eliminated its cooperation rationale for sealing the indictment; and (2) whether the indictment remained sealed for more than a reasonable period of time after that date if no other proper prosecutorial purpose existed.
In any event, a hearing would allow “the [Gjovernment [to] ‘explain and support the legitimacy of its reasons for sealing the indictment.’ ” United States v. Thompson, 104 F.Supp.2d 1303, 1306 (D.Kan.2000) (quoting United States v. Srulowitz, 819 F.2d 37, 41 (2d Cir.1987)). A challenge to a sealed indictment based on the tolling of a criminal statute of limitations results in a three-part inquiry at a hearing: “(1) Was the original decision to seal the indictment proper?; (2) If properly sealed, was the length of time the indictment was sealed reasonable?; and (3) Was the defendant prejudiced by the sealing of the indictment?” Thompson, 104 F.Supp.2d at 1306 (citing United States v. Shell, 961 F.2d 138, 141-43 (9th Cir.1992); Srulowitz, 819 F.2d at 40-41).
The insurmountable problem for Zahir is that, even if we were to accept as true his allegation of bad faith on the Government’s part in sealing the indictment and his counsel’s deficiency in ferreting out the Speedy Trial Act issues, I believe there simply was not enough harm to Zahir to conclude that his indictment would have been dismissed with prejudice. Indeed, I can conceive of no significant harm. Nor does Zahir himself plausibly propose a loss of ground, as he makes the conclusory assertions that his counsel’s failing to challenge the Government’s request to seal the indictment allowed impermissible tolling of the Speedy Trial Act (I already assumed that), precluded his trial counsel from moving to dismiss the indictment (by inference, this also is assumed), and thus caused “significant prejudice by violating [Zahir’s] right to a speedy trial.” Op. Br. at 11. The end game is to show how the violation of that right hurt Zahir’s defense, and that argument never leaves the starting gate.
There being no prejudice to Zahir by the sealing of his indictment, I agree with my colleagues, alternate conclusion that any alleged deficiency of Zahir’s counsel would not have resulted in a dismissal with prejudice of his indictment. Thus, Zahir cannot satisfy the prejudice prong of his ineffective-assistance-of-counsel claim under *590 Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

. My colleagues state that "[l]he Government’s December 4, 2003, motion to seal the indictment cited the same law enforcement reasons found to be legitimate in DiSalvo and Wright.” I disagree. In both cases, the Government offered a specific rationale for sealing the indictment that amounted to more than the need to continue investigating the defendant’s case, which the Government appears to argue here is reason enough to seal an indictment for a time period far exceeding the 70-day limit of tire Speedy Trial Act. See United States v. DiSalvo, 34 F.3d 1204, 1218 (3d Cir. 1994) (explaining the need "to seal the indictment against [DiSalvo's co-defendant, an attorney in the midst of defending a criminal trial], in order to avoid any publicity that might have an adverse impact on the prosecution of [DiSalvo's co-defendant’s client] sufficient to result in a mistrial”); United States v. Wright, 343 F.3d 849, 858 (6th Cir.2003) (discussing need to protect identity of a specific confidential informant, given ongoing investigation of Wright's co-defendants). Zahir has no co-defendants and no conspiracy was ever alleged. Moreover, there was not a plausible allegation of bad faith made in DiSalvo or Wright, as there is here.

. Zahir was already in custody at that time. He was indicted three weeks later, on December 3, 2003.